**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRITTANY BINION, individually and on behalf of all other persons similarly situated, known and unknown, | ) ) ) | |
| | ) | No. 1:22-cv-06683 |
| Plaintiff, | ) | |
| v. | ) ) | Judge: Hon. Edmond E. Chang |
| | ) | Magistrate Judge: Jeffrey T. Gilbert |
| FLEXTRONICS INTERNATIONAL USA, INC. and FLEXTRONICS AMERICA, LLC, | ) ) | |
| | ) | |
| Defendants. | ) | |

## JOINT MOTION FOR APPROVAL OF SETTLEMENT AND RELEASE AGREEMENT

Now come the parties, jointly, through Counsel, and for the reasons set forth herein, and hereby respectfully request that the Court issue and order approving the Parties' Settlement and Release Agreement (the "Agreement"). A true and complete copy of the Agreement is attached hereto as Exhibit A. A proposed order of approval is attached hereto as Exhibit B.

### I.    Introduction

Named Plaintiff Brittany Binion, on behalf of herself and all others similarly situated ("Binion" or "Named Plaintiff"), and Flextronics International USA, Inc. and Flextronics America, LLCX ("Flextronics" or "Defendants") (collectively "the Parties"), have reached a settlement in this lawsuit. The Settlement was the result of arm's-length negotiations, conducted by experienced counsel for all Parties, after exchanging extensive data and information, including payroll, computer, and timekeeping records, and after participating in a day-long, in-person mediation with esteemed wage and hour mediator, Hon. Morton Denlow (ret.). The terms of the Settlement are reasonable, appropriate, and fair to all Parties, including the Collective Members.

After approval, all Collective Members will receive a Settlement Payment issued by an

Administrator in exchange for a limited release of all the claims they have in the case for unpaid minimum and overtime wages that were asserted in this Lawsuit or that arise out of the facts asserted in this Lawsuit November 29, 2019 through the date of court approval or March 1, 2024, whichever occurs earlier.

For the reasons explained below, the Parties' Agreement is a fair and reasonable resolution of a *bona fide* dispute between the Parties. As a result, the Parties respectfully request the Court approve the Agreement.

## II.     Facts and Summary of Negotiations

On November 29, 2022, Plaintiff initiated the lawsuit *Binion v. Flextronics International USA, Inc.* (the "Lawsuit"). The Complaint alleges that Defendant violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 by failing to include all non-discretionary bonuses in Plaintiff and other similarly situated hourly employees' regular rates of pay for purposes of calculating overtime.

Rather than incur the risk and expense of litigating the Lawsuit, the Parties agreed to attempt to mediate a resolution with the assistance of Honorable Judge Morton Denlow (Ret.). Prior to attending the mediation, Flextronics retained Resolution Economics, LLP ("ResEcon") to perform a comprehensive damages analysis. (*See* Declaration of Michael L. Fradin, "Fradin Dec." attached hereto as Exhibit C at ¶ 4.). Moreover, the Parties agreed to share the analysis of ResEcon for the purposes of preparing for the mediation. (*Id.*). Flextronics provided ResEcon with all necessary time and pay records for ResEcon to analyze each category of bonus that was paid to Flextronics' non-exempt employees during the relevant time period. (ResEcon Declaration attached hereto as Exhibit D at ¶ 3.). RecEcon then computed the maximum damages exposure to Flextronics for each category of bonus. (*See id.* at ¶¶ 11,12). Prior to the mediation, Flextronics provided ResEcon's analysis to Plaintiff's Counsel. (*See* Fradin Decl. at ¶ 4.). Additionally,

Flextronics provided Plaintiff's Counsel to responses to Plaintiff's discovery requests and Plaintiff's pre-mediation "wish list" including all policies and procedures detailing the various categories of bonus payments that were paid to non-exempt employees of Flextronics. (*See id.* at ¶ 4.).

The Parties also participated in a pre-mediation conference with Judge Denlow to discuss the allegations, the possible defenses, and the parameters of the mediation. (*See id.* at ¶ 3.). Additionally, the parties exchanged mediation memorandums and settlement offers prior to the mediation session. (*Id*). The parties participated in an all-day mediation with Judge Denlow on December 5, 2023. That mediation resulted in the Agreement of the parties which was first memorialized in the Class Action Settlement Terms Sheet and is now memorialized in writing herein.

The Agreement offers significant advantages over the continued prosecution of this case: Plaintiff and the Collective Members will receive significant financial compensation within weeks of the Final Approval Order's entry, and each Collective Member maintains the right to determine whether or not to accept the payment and cash or deposit his/her Settlement Payment, thereby releasing their claims for unpaid minimum wage and compensation against Flextronics, or to forego the payment and maintain the right to pursue individual litigation on their own. The Parties agree that the terms of the Agreement, summarized below, are fair and reasonable and should be approved by this Court.

## III.    The Settlement Agreement

The Agreement provides for a gross payment from Flextronics in the amount of $750,000.00. Under the Agreement and subject to approval by this Court, the Parties seek to certify a collective action for settlement purposes under the FLSA and send notice to all current and former non-exempt employees of Flextronics International USA, Inc. in the United States, except

for California, who worked in excess of forty (40) hours in any given workweek and were paid at least one nondiscretionary bonus that was not included in their regular rate of pay for purposes of calculating overtime at any time starting three years before this Complaint was filed, up to the present. The Agreement provides for Settlement Payments for all such individuals that elect to participate. Such individuals will release all unpaid minimum and overtime wages that were asserted in the Lawsuit or that arise out of the facts asserted in the Lawsuit, including, but not limited to any unpaid wage claims under the Fair Labor Standards Act, Illinois Minimum Wage Law, and any applicable state, local or municipal law or regulation, and any related claims for statutory damages, liquidated damages, penalties, attorneys' fees and costs, and interest. The release encompasses all such claims from November 29, 2019 through the date of court approval or March 1, 2024, whichever occurs earlier.

The Agreement further provides for a Service Award to the Named Plaintiff in the Amount of $7,500.00 in recognition of her efforts and service to the benefit of the Collective Members. The Agreement further provides for an award of attorney fees of one-third of the gross amount ($250,000.00), reimbursement of costs to Plaintiffs' Counsel in the amount of $17,500.00, and payment of costs to the Settlement Administrator in the amount of $29,074.00

The Parties ask the Court to certify, for settlement purposes only, a collective action pursuant to Section 216(b) of the FLSA. The group who would be provided notice and an opportunity to join this lawsuit and participate in the Settlement is composed of:

> All current and former non-exempt employees of Flextronics International USA, Inc. in the United States, except for California, who worked in excess of forty (40) hours in any given workweek and were paid at least one nondiscretionary bonus that was not included in their regular rate of pay for purposes of calculating overtime at any time starting three years before this Complaint was filed, up to the present

The certification of a collective action under the FLSA for settlement purposes would allow the Parties to send a Court-approved Notice Packet to all of the Collective Members. (The Notice

Packet is Exhibit A to the Settlement Agreement). Along with the Court-approved Notice, all Collective Members will receive a check they can endorse and cash to join the settlement. The Notice Packet explains that by signing and cashing the check, the individual is agreeing to join the Lawsuit as an Opt-In Plaintiff and participate in the settlement. As the Parties explain in more detail below, there are no due process concerns because under the opt-in FLSA settlement process, only those individuals who voluntarily agree to join the lawsuit and cash the check would be bound by the Settlement. If a Collective Member chooses not to join this lawsuit and not cash their settlement check, then that individual loses no rights and is free to pursue their individual claim, if desired, as they see fit. Unlike a class action, where there are absent class members and a class member may lose rights unless they opt-out, in a collective action settlement such as this one, individuals forfeit no rights unless they voluntarily choose to be part of the lawsuit and cash the check.

## IV. Argument

### A.    A One-Step Approval Process for FLSA Settlements Is Standard

Pursuant to the FLSA, claims for back wages and other damages arising under the FLSA may be settled or compromised with the approval of the District Court or Secretary of Labor. *See Brooklyn Savings Bank v. O'Neil,* 324 U.S. 67 (1945); *D.A. Schulte, Inc. v. Gangi,* 328 U.S. 108 (1946); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-54 (11th Cir. 1982). Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Furman v. At Home Stores LLC,* No. 16-cv-8190, 2017 WL 1730995, at *1 (N.D. Ill. May 1, 2017).

In the Seventh Circuit and throughout the country, a one-step approval process is appropriate in FLSA opt-in settlements that do not include Rule 23 opt-out classes. *See, e.g., Prena v. BMO Fin. Corp.*, No. 15-C-09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) ("One

step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in, in order to be bound by the settlement (including the settlement's release provision)."); *Roberts v. Apple Sauce, Inc.*, No. 3:12-CV-830-TLS, 2014 WL 4804252 (N.D. Ind. Sept. 25, 2014); *see also Bozak v. FedEx Ground Package Sys., Inc.*, No. 3:11-cv-00738-RNC, 2014 WL 3778211, at *9-10 (D. Conn. July 31, 2014) (approving FLSA notice providing notice of settlement terms and options facing class), 2014 U.S. Dist. LEXIS 106042 (D. Conn. July 31, 2014).

## V. This Court Should Grant the Motion and Find the Agreement Fair and Reasonable

### A. The Agreement Is Fair and Reasonable and Should Be Approved

The Court should approve the Settlement Agreement because it is fair and reasonable. To approve the Settlement, the Court should determine that the proposed settlement reflects a reasonable compromise over contested issues. *Furman v. At Home Stores LLC, No. 16-cv-8190,* 2017 WL 1730995, at *1 (N.D. Ill. May 1, 2017). Courts approve wage and hour settlements reached as a result of contested litigation to resolve *bona fide* disputes. *See, e.g., Lynn's Food Stores*, 679 F.2d at 1355; *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354.

Here, the Agreement was negotiated at arm's-length by experienced counsel; the amount Flextronics has agreed to pay the Collective Members is fair and adequate; there is a significant risk to the Collective Members of an adverse judgment on the merits or whether the case should proceed as a collective action; the Collective Members will receive adequate notice sufficient for each potential opt-in to assess their rights; the members of the Collective Members are sufficiently similar for *final* certification for settlement purposes; and the amount of fees, costs and incentive

payments requested are in line with sums previously awarded in similar cases. This Agreement is particularly fair and reasonable because, unlike a class action settlement, only those individuals who voluntarily choose to become part of the lawsuit, and thus to participate in the settlement, are bound by it. As the parties explain more fully below, any potential Collective Member who thinks the settlement is unfair is not obligated to participate in the settlement and is not bound by it.

B.     <u>Settlement is the Product of Arm's Length Negotiations of a Bona Fide Dispute</u>

The Agreement in this case is the result of arm's-length negotiations, involving the exchange of class/collective discovery and extensive settlement discussions between counsel for the Parties. Additionally, Plaintiff recognizes the expense and length of the proceedings necessary to continue the litigation against Flextronics through trial and through any possible appeals. Plaintiff has also taken into account the uncertainty and risk of the outcome of further litigation, the defenses raised by Flextronics, and the difficulties and delays inherent in litigation.

Prior to attending the mediation, Flextronics retained Resolution Economics, LLC ("ResEcon") to perform a comprehensive damages analysis. (*See* Simon Dec. at ¶ 4.). Moreover, the Parties agreed to share the analysis of ResEcon for the purposes of preparing for the mediation. (*Id*). Flextronics provided ResEcon with all necessary time and pay records for ResEcon to analyze each category of bonus that was paid to Flextronics' non-exempt employees during the relevant time period. (ResEcon Declaration attached hereto as Exhibit D at ¶ 4.). RecEcon then computed the maximum damages exposure to Flextronics for each category of bonus. (*See id.* at ¶ 12.). Prior to the mediation, Flextronics provided ResEcon's analysis to Plaintiff's Counsel. (*See* Fradin Decl. at ¶ 4.). Additionally, Flextronics provided Plaintiff's Counsel to responses to Plaintiff's discovery requests and Plaintiff's pre-mediation "wish list" including all policies and procedures detailing the various categories of bonus payments that were paid to non-exempt employees of Flextronics. (*See id.* at ¶4.).

Plaintiff's Counsel has considerable experience in litigation of class and collective actions, including wage and hour matters. (*See* Fradin Decl. at ¶ 8.). Plaintiff's Counsel determined as a result of their analysis of all the information provided that Flextronics had viable defenses to Plaintiff's claims in that certain categories of bonuses could have been deemed discretionary and therefore not legally required to be included in the regular rates of pay for the purposes of computing overtime. (*See Id.* at ¶ 7.). These issues could have served as obstacles to any efforts to certify a collective or class in this matter. (*Id*). Therefore, Plaintiff's Counsel believes that there is significant uncertainty and risk in continuing the litigation. (*Id*), Thus, Counsel has determined that the monetary terms of each Plaintiff's respective settlement are fair, adequate, and reasonable, and in the best interests of each Plaintiff. (*Id*).

C.    The Settlement Amount is Fair

Not only is the Agreement the product of an adversarial, non-collusive process, but the amount to be paid to the Collective Members is fair and reasonable. Through the pre-mediation exchange of information, it was determined that Flextronics maximum exposure, if Plaintiff and all non-exempt employees were successful on all aspects of their claims, would result in unpaid wages totaling $494,313.00. (*See* Fradin Dec. at ¶ 9.). Statutory penalties associated with those unpaid wages brought Flextronics' total exposure to $1,375,527.30. (*Id*).

As such, the gross amount due under the Agreement represents over a 100% recovery of all unpaid wages and nearly 55% recovery of all unpaid wages plus all available statutory penalties recoverable on Plaintiff's and the Collective Members' "best day in court." Such a recovery is far beyond the thresholds necessary to approve a settlement. *Mars Steel Corp.v Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding a settlement of 10% of the total sought adequate due to risks and costs of trial); *Viceral v. Mistras Group, Inc.*, 2016 WL 5907869, at \*7-8 (N.D. Cal. Oct. 11, 2016) (in class action for owed wages, settlement payment equal to 11.6% and 5.2% of

estimated value of state and federal claims is fair and reasonable in light of strength and variability of claims and risks on merits); *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933,at *8 (N.D. Ohio Mar. 8, 2010) (finding that a recovery of one-third of the owed wages for class members, before deducting attorneys' fees and costs, is "well above" average).

        D.    <u>Due Process Considerations</u>

Section 216(b) collective actions such as this do not implicate the same due process concerns as Rule 23 class actions because they require workers to voluntarily opt-in to the litigation. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771 (7th Cir. 2013); *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."). Under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989). Accordingly, courts do not apply the exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements. *See, e.g., Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (stating that due process concerns present in Rule 23 class actions are not present in FLSA collective actions). There is no need to require that the settlement provide for opt-outs or objections where individuals are not part of the settlement unless they decide to participate. *Prena*, 2015 WL 2344949 at *1; *Woods*, 686 F.2d at 580.

In this case, each Collective Member only has to timely sign and cash the check enclosed in the Notice Packet, and only if they independently decide to cash the check will they be bound by the settlement. Any individual who chooses not to cash the Settlement Check is not bound in any way by the settlement or any release. That significant difference from a class action settlement

weigh in favor of final approval since the individual class members will have the opportunity to make an informed decision about whether to join the settlement and will not be bound by it unless they affirmatively choose to do so.

     D.    <u>The Service Award to Named Plaintiff Should Be Approved as Fair and Reasonable</u>

The settlement agreement allocates $7,500 as a service award to the Named Plaintiff. Plaintiffs in class and collective action lawsuits play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See, e.g., Cook v. Niedert*, 142 F.3d 1004, 1006 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012). This is especially true in employment litigation. *See Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employeror co-workers.").

In examining the reasonableness of a requested service award, courts consider: (1) the actions the plaintiff has taken to protect the interests of the class, (2) the degree to which the class has benefitted from those actions, and (3) the amount of time and effort the plaintiff expended in pursuing the litigation. *Cook*, 142 F.3 at 1016; *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No.07 Civ. 2898, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012).

In this case, Plaintiff worked diligently to protect and advocate on behalf of the Class. Plaintiff also contributed significantly to the settlement of the case as her active role in the

exchange of information detailed herein enabled to parties to determine the proper scope of settlement negotiations and his first-hand knowledge proved valuable in allowing the parties to understand the risks of litigation. (Simon Decl. at ¶ 10).

The service award amount is reasonable. *See Lucas v. CITGO Petroleum Corporation,* Case No. 1:21-cv-05770, Doc. #49 (N.D. Ill., Sept. 19, 2023) (awarding $7,500 to named plaintiff); *Jordan v. GoHealth, LLC,* Case No. 1:21-cv-4736 (N.D. Ill. Jun. 21, 2022) (awarding $7,500 to named plaintiff); *Zolkos,* 2015 WL 4275540, at *3 (awarding $10,000 to each of the Named Plaintiffs); *Chesemore,* 2014 WL 4415919, at *5 (stating "[a]s for appropriate amount, district courts in the Seventh Circuit have awarded incentive fee awards ranging from $5,000 to $25,000"); *In re Sw. Airlines Voucher Litig.*, No. 11 C 8176, 2013 WL 4510997, at *11 (N.D. Ill. Aug. 26, 2013) (approving $15,000 award for two class representatives because of active participation in litigation); *Mullins,* 2019 WL 275711, at *6 (approving $10,000 service award); *Arledge,* 2018 WL 5023950, at *6 (approving $10,000 service award); *Briggs,* 2016 WL 7018566, at *3 (approving $12,500 in service award to two plaintiffs in FLSA settlement for a total of $25,000 in service awards); *Castillo,* 2016 WL 7451623, at *3-4 (approving $10,000 service award to four plaintiffs in FLSA settlement for a total of $40,000 in service awards); *Furman v. At Home Stores LLC*, No. 1:16-cv-081900, 2017 WL 1730995, at *3 (awarding $10,000 service award).

F.    Attorneys' Fees and Costs Should Be Approved As Fair And Reasonable

The norm in the Seventh Circuit is to use the percentage of the fund method in common fund cases like this one. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014); *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003) (preferring the percentage of fund

approach because "if class counsel invested too many hours, dallied when preparing the settlement, or otherwise ran the meter, the loss falls on counsel themselves"); *Campbell v. Advantage Sales & Mktg. LLC*, No. 09 Civ. 1430, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (using percentage of the fund approach in FLSA settlement). Whereas "[t]he lodestar create[s] an unanticipated disincentive to early settlements," (*Carlson v. Xerox Corp.*, 596 F.Supp.3d 400, 405 (D. Conn. 2009)), "[a]warding attorney's fees through a percentage of common fund is consistent with the need to incentivize lawyers to resolve cases early and to avoid over-litigating them in order to recover a large fee." *McCue v. MB Fin., Inc.*, No. 15-cv-988, 2015 WL 4522564, at *3 (N.D. Ill. July 23, 2015); *see also Martin v. Dun & Bradstreet, Inc.*, No. 1:12-cv-215, 2014 WL 9913504, at *1 (N.D. Ill. Jan. 16, 2014). Under the percentage of fund analysis, "courts can expect attorneys to make cost-efficient decisions about whether certain expenses are worth the win." *Gaskill v. Gordon*, 942 F.Supp. 382, 386 (N.D. Ill. 1996). Likewise, the percentage of fund method conserves judicial resources. *See Hensley v. Eckhart*, 461 U.S. 424, 437 (1983) (fee requests "should not result in a second major litigation").

Here, the Agreement contemplates Plaintiff's attorneys' fees being paid as one-third of the total settlement amount. Courts in the Northern District of Illinois routinely approve one-third of the settlement fund as attorneys' fees in FLSA wage and hour settlements. *See, e.g., Castillo*, 2016 WL 7451626, at *3-4 (awarding one-third of a $3,000,000 settled fund in FLSA overtime action); *Furman*, 2017 WL 1730995, at *3-4 (awarding one-third of a $990,000 settlement in FLSA overtime action); *Briggs*, 2016 WL 5109196, at *3-4 (awarding one-third of $2,825,000 settlement fund in FLSA overtime case); *Zolkos*, 2012 WL 4275540, at *3 (awarding one-third of $3,350,000 settlement in FLSA claim); *Day*, 2018 WL 24673472, at *2-3 (awarding one-third of $900,000 settlement in FLSA matter).

12

In awarding attorneys' fees, courts ultimately "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and normal rate of compensation in the market at the time." *Castillo*, 2016 WL 7451626, at *4 (citing *id.*). District courts must "undertake an analysis of the terms to which private plaintiffs and their attorneys contracted at the outset of litigation when the risk of loss still existed." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007). They must "do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, [and] information from other cases…" *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005). Moreover, "Courts within this District have also recognized that a fee award of 33 1/3% is in fact in 'line with that which has, in previous cases, been approved…" *Steele v. GE Bank*, No. 1:08-cv-1880, 2011 WL 13266250, at *6 (N.D. Ill. May 17, 2011); *see also* 4 Robert Newberg, *Newberg on Class Action* § 14.6 (4th ed.2002) ("[F]ee awards in class actions average one-third of the recovery[.]"),

Here, the request for one-third of the settlement amount is reasonable. The competence of Plaintiff's Counsel led to an efficient resolution which created a substantial benefit to the class. *See Day*, 2018 WL 2473472, at * 2 (finding one-third award of $900,000 is appropriate because Plaintiff's counsel accomplished "early resolution of the case without wasteful litigation to increase lodestar hours."). The above decisions in *Castillo*, *Furman*, *Briggs*, *Zolkos*, and *Day* comport with the Seventh Circuit's instruction on market price application to percentage of fund awards in *In re Synthroid Mktg. Litig.*

Second, the substantial benefit conferred upon the Class justifies the fee award. The settlement provides significant value to those who elect to participate. At the same time, it offers individuals who do not wish to release their claims the ability to pursue their claims elsewhere. *See Ramah v. Navajo Chapter v. Babbitt*, 50 F.Supp.2d 1091, 1103-04 (D.N.M. 1999) (absence

13

of overly broad release supports fee award). As detailed above, the average amount that an individual will receive is $1,196.79.

Third, the early resolution obtained means Collective Members are not required to wait for years before receiving payment. *See Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 5862749, at * 2 (S.D.N.Y. 2012) (endorsing early settlement of wage and hour class actions);*see also Day*, 2018 WL 247342, at *2 (encouraging early resolution to avoid "wasteful litigation").

Fourth, the risk of non-payment was substantial. In pursing this claim, Plaintiff's Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent Plaintiff and similarly situated employees. *Taubenfeld*, 415 F.3d at 600 (approving district court's reliance on this factor in evaluating attorney's fees). Plaintiff's Counsel represented Plaintiff on a contingency fee basis with a strong risk that they would receive no fee. *See Sutton*, 504 F.3d 688, 693-94 ("there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts when representing a class because their fee is linked to the success of the suit."); *see also Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (stating Plaintiff's Counsel "could have lost[and could still lose] everything invested").

Fifth, the contingency fee agreement entered into between Plaintiff and Plaintiff's Counsel for one-third justifies the request; *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (noting that *ex ante* agreements better approximate the prevailing market rate between willing buyers and sellers of legal services).

Lastly, the Settlement Agreement calls for up to $17,500.00 in costs advanced to be reimbursed. These costs consist of the costs of the private mediation, filing fees, the costs of

14

service of process and other nominal administrative costs. (*See* Fradin Decl. at ¶ 11.). This amount is modest, particularly in relation to the total amount of the Settlement. Moreover, the vast majority of the costs to be reimbursed resulted from the private mediation. Without that private mediation, the parties would most likely have no Settlement.

## VI. Conclusion

For the reasons stated above, the Parties respectfully request that the Court approve the Settlement and issue an Order dismissing this action with prejudice and directing the entry of final judgment.

Dated: January 23, 2024

By: /s/ William J. Wortel
One of the Attorneys for Defendants,
Flextronics International USA, Inc. and
Flextronics America, LLC

William J. Wortel (6238388)
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
Telephone: (312) 602-5000
Facsimile: (312) 602-5050
bill.wortel@bclplaw.com

Julia A. Pair (6340239)
BRYAN CAVE LEIGHTON PAISNER LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102
Telephone: (314) 259-2000
Facsimile: (314) 259-2020
julia.pair@bclplaw.com

By: /s/ Michael L. Fradin (with permission)
One of the Attorneys for Plaintiff,
Brittany Binion

Michael L. Fradin

15

Michael L Fradin, Attorney at Law
8401 Crawford Ave., Suite 104
Skokie, Illinois 60076
Telephone: (847) 986-5889
mike@fradinlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 23rd day of January, 2024, the foregoing was filed using the Court's CM/ECF system and will be served via the Court's CM/ECF filing system.


*s/ Michael L. Fradin*
Attorney for Plaintiff